Merle D. COVERT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 14A05–9204–CR–108.

Court of Appeals of Indiana,
Fifth District.

April 26, 1993.

C. Michael Steiner, Hayes, Dant and Steiner, Washington, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of

Atty. Gen., Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

Defendant-appellant Merle D. Covert was convicted of Operating a Vehicle With .10% or More Alcohol in Blood, a Class C misdemeanor. On appeal we address the issue of whether the trial court erred in refusing to suppress the alcohol evidence which was obtained as the result of a roadblock.

We reverse.

On June 25, 1991, Indiana State Troopers Jackie Taylor and Gary Wier, in accordance with instructions from their squad sergeant, established a safety checkpoint on State Road 58 in Odon, Indiana. The officers summoned cars to the side of the road where they began an inspection of each operator's driver's license and registration. The lights, brakes, tires and mufflers of each car were also inspected. The officers stopped six to eight cars at a time from both the eastbound and westbound lanes of traffic. Provided they found no violations, the officers directed each driver back onto the roadway and then stopped another group of cars. The occupants were detained for two to three minutes.

Merle Covert was travelling along State Road 58 when the officers signaled him and six other drivers to pull over to the side of the roadway. The officers had no reason to believe Covert was in violation of any traffic offense. Upon approaching Covert to ask for his driver's license and registration, Officer Wier smelled alcohol on Covert's breath. As a result, he administered an alco-sensor test which indicated Covert's blood-alcohol level was above the legal limit. The officers transported Covert to the Washington Police Department where he was given various sobriety tests in addition to another breath test. Covert failed the sobriety tests, and the results of the breath test showed a blood-alcohol content of .14%.

Covert was arrested and charged with Operating a Vehicle with .10% or More Alcohol in Blood. Prior to trial Covert moved to suppress all evidence arising from his arrest arguing it was the product of an illegal search and seizure. The motion was denied. At trial the evidence was introduced over Covert's timely objection. Covert was found guilty as charged and this appeal ensued in due course.

■ Covert contends the trial court erred by admitting into evidence the blood-alcohol test results as well as testimony concerning his intoxication. According to Covert such evidence was the product of an illegal search and seizure. Covert argues the police officers' authority to stop his car must have been predicated on either one of two theories: (a) the officers had reasonable suspicion that he had committed or was about to commit a crime, or (b) the stop was based upon a roadblock conforming to the requirements of the Fourth Amendment to the United States Constitution. Covert insists neither theory is supported by the evidence in this case.[1]

■ We agree with Covert that at the time his car was stopped the officers had no reason to believe he was committing or about to commit a crime. As a general rule motorists do not abandon their Fourth Amendment protection simply by entering their automobiles. Rather, in order to conduct a search or seizure of a motorist, an officer must have a reasonable suspicion based upon specific and articulable facts and rational inferences from those facts that the occupant is committing or about to commit a crime. *Snyder v. State* (1989), Ind.App., 538 N.E.2d 961, *trans. denied.* In this case Trooper Jackie Taylor testified there was no factual basis to suspect Covert of criminal behavior.

■ However, Covert's challenge to the roadblock is another matter. Where a

---

1. Covert also cites to Indiana Constitution Article I, § 11 which prohibits unreasonable search and seizure. However, because Covert accompanies this reference with no argument or citation to authority, he has waived any claim thereunder. Ind.Appellate Rule 8.3(A)(7); *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, *cert. denied,* —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075.

roadblock is constitutionally established, police may stop automobiles at such roadblocks without the necessity of probable cause or reasonable suspicion of illegal activity. *Snyder, supra.*

In *State v. Garcia* (1986), Ind., 500 N.E.2d 158, *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496, our supreme court, in a 3–2 decision, affirmed the validity of certain roadblocks. In so doing, the court set forth a three-prong balancing test to determine whether a particular roadblock procedure violates a defendant's Fourth Amendment right against unreasonable searches and seizures such that evidence obtained thereby should be suppressed. The test weighs: 1) the gravity of the public concerns served by the seizure, 2) the degree to which the seizure advances the public interest, and 3) the severity of the interference with individual liberty. Further, the seizure must be carried out under a plan embodying explicit, neutral limitations on the conduct of individual officers. *Garcia*, 500 N.E.2d at 161, *citing Brown v. Texas* (1979) 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357, and *Delaware v. Prouse* (1979) 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. We examine the roadblock procedure in this case in light of *Garcia*.[2]

## I. GRAVITY OF PUBLIC CONCERNS SERVED BY THE SEIZURE:

In *Garcia* the challenged roadblock was established to check for improperly licensed operators, improperly registered automobiles, under-age drinking and motorists driving while intoxicated. Here, the challenged roadblock was established to check only automobile safety and improperly registered automobiles.

We are not convinced the public's concern with automobile safety and proper registration is as grave as the public's concern with under-age drinking and motorists driving while intoxicated. The number of deaths attributable to drunk drivers in this country exceeds that of all our wars. Such dire statistics represent "evidence our society has a grave concern in apprehending and deterring drunken driving and that traditional methods have not effectively combatted the problem." *Garcia*, 500 N.E.2d at 162.

Nonetheless, we must acknowledge that the public interest of ensuring highway safety has a history of being recognized in this State. For example, in *Williams v. State* (1974), 261 Ind. 547, 307 N.E.2d 457, 460 (Prentice and DeBruler, JJ., dissenting), our supreme court noted: "[s]ocial interests under the police power should give law officers the right to stop users of the highways to check, for instance, their right to use the highway or to check the vehicles for safety standards." In *Irwin v. State* (1978), 178 Ind.App. 676, 383 N.E.2d 1086, 1089, this court observed "no one questions the right of law enforcement officers to establish a roadblock to conduct a routine traffic check of all vehicles and drivers passing through that point during a given period of time." Therefore, we conclude the public interest of ensuring automobile safety and proper registration is at least slightly weighted in favor of the roadblock procedure used in this case.

## II. DEGREE TO WHICH THE SEIZURE ADVANCES THE PUBLIC INTEREST:

In *Garcia* the State Police released prior publicity in numerous newspapers concerning its plan to conduct roadblocks although no particular location was announced. During the two-hour roadblock the police stopped approximately one hundred cars, issued twenty traffic citations, and made seven arrests for driving while intoxicated. The majority of our supreme court concluded that based on this data the roadblock procedure successfully advanced the public interest in detecting and preventing drunken driving and detecting unlicensed drivers.

---

2. At oral argument and in his brief Covert complains the State seeks to circumvent the requirements set forth in *Garcia, supra* by characterizing its roadblock as a "safety checkpoint." Even assuming there is a distinction between the two, for Fourth Amendment purposes the distinction is without a difference.

■ Covert complains the roadblock procedure in this case is constitutionally infirm because *Garcia* mandates advance publicity and there was none in this case. Covert misreads *Garcia.* That case does not require advance publicity as a pre-condition to establishing the validity of a roadblock. Rather, evidence of advance publicity weighs very heavily in determining whether and to what degree the roadblock advances the public interest. In quoting with approval a case from the Commonwealth of Virginia our supreme court noted:

[T]he deterrent effect of such a highly publicized program is obvious; such a visible project is bound to increase the perceived risk of arrest in the minds of those drunk drivers who are never arrested.

*Garcia,* 500 N.E.2d at 162 (citation omitted).

In this case no advance publicity was given and none was required. Nonetheless the record must demonstrate how and to what degree the public interest has been advanced by the roadblock procedure the officers used. The State contends the public interest in assuring safe highways has been advanced here because "drivers of unsafe vehicles stopped in the checkpoint would have been encouraged to repair their vehicles. Drivers of vehicles passing the inspection would be encouraged to keep their vehicles in repair." *Appellee's Brief* at 9. In essence the State implies the roadblock served as a deterrent, the effect of which can be measured by the roadblock's impact on stopped motorists.

Even if we were to accept the State's position, we must conclude the deterrence here is minimal at best. In assessing deterrence, we must focus not only on the roadblock's impact on stopped motorists, but also its impact on those motorists who may have been tempted to operate unsafe or unregistered vehicles but refrained from so doing because of the roadblock's existence. Only in this manner can we say the roadblock actually had a significant deterrent effect. Absent a significant deterrent effect, the degree to which the roadblock procedure advances the public interest in assuring safe highways is minimal.

## III. SEVERITY OF INTERFERENCE WITH INDIVIDUAL LIBERTY:

■ Even a brief stop of an automobile and detention by its occupants constitutes a seizure. *See United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874. Thus, the State carries a very heavy burden in demonstrating its stop and detention conform with the requirements of the Fourth Amendment.

It is true the intrusion complained of here is similar to the intrusion approved by the majority in *Garcia.* In both instances a small group of cars was detained for approximately two to three minutes while officers inspected the cars after asking drivers to produce their license and registration. However, in *Garcia* our supreme court determined that the severity of interference was minimal "especially when considered in light of the great public concern involved here and the degree of successfully abating the social evil being addressed." *Garcia,* 500 N.E.2d at 162.

While we acknowledge there is public interest in ensuring automobile safety and proper registration, we do not believe there is "great public concern" with this issue. Further, the degree to which the roadblock procedure here successfully addressed the public interest is very slight. Thus, unlike the roadblock procedure in *Garcia,* here the severity of interference with motorists' individual liberties was severe rather than minimal.

■ Finally, in apparent reference to *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357, Covert complains there was no written plan for implementing the roadblock procedure in this case. "[T]he seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown,* 443 U.S. at 51, 99 S.Ct. at 2640, quoted with approval in *Garcia,* 500 N.E.2d at 161. However, even if this court were to agree that a written plan is prefer-

able and would better facilitate judicial review, the majority of our supreme court has put this issue to rest in *Garcia*. In that case there was nothing in writing detailing the procedure the officers were to follow in conducting the roadblock. Rather, the officers were instructed concerning the procedure to be used and "it was uniformly followed the entire two hours, thereby meeting the neutral plan requirement of *Brown*." *Garcia*, 500 N.E.2d at 162. Here, the officers followed a non-written plan similar to that used by the officers in *Garcia*. We are bound by the decision in that case.

### IV. CONCLUSION:

Applying the *Garcia* balancing test, we conclude the roadblock procedure in this case was constitutionally infirm. Although the roadblock may have been designed to further a legitimate governmental interest, both the interest furthered and the degree to which the roadblock was designed to further it are not weighted in favor of the State. Because evidence of Covert's intoxication was the product of an illegal search and seizure, the trial court erred in refusing to suppress the evidence.

Judgment reversed.

SHARPNACK, C.J., and BAKER, J., concur.