STATE of Indiana, Appellant–Plaintiff,

v.

Jarrod E. GERSCHOFFER, Appellee–Defendant.

No. 71A05–0003–CR–116.

Court of Appeals of Indiana.

Nov. 28, 2000.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General Indianapolis, IN, Attorneys for Appellant.

Mark A. Kopinski, South Bend, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

The State appeals from the trial court's order granting Jarrod E. Gerschoffer's motion to suppress evidence of intoxication obtained at a sobriety checkpoint. The question presented is a matter of first impression, namely, whether sobriety checkpoints violate Article I, Section 11 of the Indiana Constitution. We hold that a sobriety checkpoint constitutes an unreasonable seizure under the Indiana Constitution and that, as such, the trial court properly suppressed the evidence of Gerschoffer's intoxication.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On the evening of June 18, 1999, the Indiana State Police and the Mishawaka Police Department conducted a joint sobriety checkpoint on McKinley Avenue in Mishawaka. Indiana State Police Sergeant Gary Coffie and Mishawaka Police Corporal Timothy Williams had previously agreed on a plan to conduct the checkpoint and notified local news media two days earlier. The officers selected the site of the checkpoint because that location had been used before, it had been a "trouble spot" for the Mishawaka Police Department, and it was well-lighted and allowed police to pull cars off the road without impeding traffic.

At approximately 11:30 p.m., police set up the checkpoint according to the plan. Coffie positioned his patrol car in the middle of McKinley Avenue with a sign indicating a sobriety checkpoint. Police placed cones and flares leading traffic from the roadway into an adjacent parking lot. Coffie then began to flag down five cars at a time to enter the checkpoint, permitting

other vehicles to proceed. Each driver entering the checkpoint was asked to produce his license and vehicle registration. If an officer suspected that a driver was intoxicated, the officer would ask the driver to perform field sobriety tests. If no violations were detected, the driver was allowed to leave, and the stop lasted not more than five minutes.

Gerschoffer was one of seventy cars to pass through the sobriety checkpoint. While speaking to Gerschoffer, Williams smelled a strong odor of alcohol, observed that Gerschoffer's eyes were glassy and bloodshot, and noticed that his speech was slurred. After failing three field sobriety tests, Gerschoffer agreed to submit to a chemical test, which revealed he had a blood alcohol content ("BAC") of 0.11.

The State charged Gerschoffer with operating a vehicle while intoxicated ("OWI") and with operating a vehicle with a BAC of at least 0.10. Both offenses were elevated to Class D felonies because Gerschoffer had a previous conviction of OWI within the last five years. Gerschoffer filed a motion to suppress all evidence of his intoxication obtained at the sobriety checkpoint, claiming that the checkpoint violated the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution.

Following a hearing, the trial court granted Gerschoffer's motion to suppress. The court concluded that the sobriety checkpoint "did not violate the Fourth Amendment, as it followed very closely the guidelines approved by the Indiana Supreme Court in [State] Garcia v. [Garcia} State, [500 N.E.2d 158 (Ind.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1986 [1987]) ]." However, the trial court determined that the checkpoint did not satisfy the requirements of Article I, Section 11, noting that "where no exigent circumstances exist; and where the [S]tate could easily seek the issuance of a warrant from a neutral detached judicial officer, failure to do so is unreasonable."

The State challenges that ruling on appeal.[1]

## DISCUSSION AND DECISION

### Standard of Review

■ Initially, we note our standard of review on appeal from an order granting a motion to suppress. The State has the burden of demonstrating the constitutionality of the measures it uses to secure evidence. *See State v. Ashley,* 661 N.E.2d 1208, 1211 (Ind.Ct.App.1995). Therefore, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Smith,* 638 N.E.2d 1353, 1355 (Ind.Ct.App.1994).

The State contends that the trial court improperly suppressed evidence of Gerschoffer's intoxication obtained at the sobriety checkpoint. In particular, the State argues that the trial court erred when it concluded that a sobriety checkpoint constitutes an unreasonable seizure under Article I, Section 11 of the Indiana Constitution. We agree with the trial court.

### Sobriety Checkpoints under the Fourth Amendment

■ Before addressing the constitutionality of sobriety checkpoints under Article I, Section 11, we summarize federal jurisprudence on the subject. The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As a general rule, a motorist surrenders neither his reasonable expectations of privacy nor the protections of the Fourth Amendment when he steps into his automobile. *Delaware v. Prouse,* 440 U.S. 648, 662–63, 99 S.Ct. 1391, 59 L.Ed.2d 660

1. We heard oral argument at the Indiana University School of Law in Bloomington.

(1979). Accordingly, police officers may search an automobile or seize its occupants only upon obtaining a warrant or upon having probable cause to believe a crime has been committed by occupants of the vehicle. *Snyder v. State*, 538 N.E.2d 961, 963 (Ind.Ct.App.1989), *trans. denied.*

The centerpiece of federal search and seizure jurisprudence is the warrant requirement. *Brown v. State*, 653 N.E.2d 77, 80 (Ind.1995). Searches and seizures conducted outside the judicial process, that is, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment. *Green v. State*, 719 N.E.2d 426, 428 (Ind.Ct.App.1999). This fundamental principle is subject to a few specific and well-delineated exceptions, one being the *Terry* investigatory stop and frisk. *Id.* In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established that the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity may be afoot. *Stalling v. State*, 713 N.E.2d 922, 924 (Ind.Ct.App.1999) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). In such a case, the officer may briefly detain the occupants of a vehicle "to conduct a limited 'non-invasive' search such as a 'pat down' for weapons, a license and registration check, or field sobriety tests." *Snyder*, 538 N.E.2d at 963.

The United States Supreme Court has also created a sobriety roadblock exception to the Fourth Amendment warrant requirement. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) ("*Sitz I* "). It is well settled that stopping a vehicle at a roadblock constitutes a seizure for Fourth

Amendment purposes. *Id.* at 450, 110 S.Ct. 2481. However, the Supreme Court has determined that such a stop is less intrusive than a traditional arrest, and therefore, that its reasonableness depends upon a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers. *See id.* at 450–55, 110 S.Ct. 2481; *see also Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (striking down random stop-and-identify statute as unconstitutional). In *Brown v. Texas*, the Supreme Court enunciated three factors to be weighed in determining the reasonableness of "a variety" of seizures that fall short of a traditional arrest:

> (1) the gravity of the public concerns served by the seizure,
>
> (2) the degree to which the seizure advances the public interest, and
>
> (3) the severity of the interference with individual liberty.

*Brown*, 443 U.S. at 50, 99 S.Ct. 2637. The court subsequently held in *Sitz I* that the *Brown v. Texas* balancing test applies to sobriety checkpoints and that the balance of the State's interest in preventing drunken driving, the extent to which sobriety checkpoints advance that interest, and the degree of intrusion on motorists' individual rights weighs in favor of the State.[2] *Sitz I*, 496 U.S. at 450–55, 110 S.Ct. 2481.

A "central concern" in assessing the competing considerations set forth in *Brown v. Texas* has been to make certain that "an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 99 S.Ct. 2637; *see also Prouse*, 440 U.S. at 663, 99 S.Ct. 1391 (striking down random, discretionary stops to check

---

**2.** But on remand, the Michigan Supreme Court held that the Michigan Constitution extends greater protection to state citizens than that afforded by the Fourth Amendment as determined by the United States Supreme Court in *Sitz I. See Sitz v. Department of State Police*, 443 Mich. 744, 506 N.W.2d 209, 223–24 (1993) ("*Sitz II* "). The court struck down the use of highway sobriety checkpoints as a violation of state constitutional search and seizure provisions.

for driver's licenses and vehicle registrations and holding that "persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers."). In addition, "the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown*, 443 U.S. at 51, 99 S.Ct. 2637. When stops are made pursuant to a plan that satisfies the Fourth Amendment balancing test set forth in *Brown v. Texas*, such stops may be made without probable cause or reasonable suspicion. *Snyder*, 538 N.E.2d at 963.

In *State v. Garcia*, 500 N.E.2d 158, 161 (Ind.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987), our supreme court upheld in a 3–2 decision the constitutional validity of sobriety roadblocks as an enforcement mechanism to combat drunken driving, so long as the roadblocks met the guidelines set forth in *Brown v. Texas* and other Fourth Amendment cases. The roadblock procedure at issue in *Garcia* was similar to the sobriety checkpoint here. Specifically, police officers stopped five consecutive cars at a time and asked the drivers to produce their driver's licenses or registration certificates. *Id.* If a violation was suspected or alcohol consumption detected, the driver was then pulled over to an adjacent parking lot for further investigation. *Id.* In upholding the validity of the roadblock on Fourth Amendment grounds, the court weighed the factors identified in *Brown v. Texas* and found that the State had a "grave concern in apprehending and deterring drunken driving[.]" *Id.* at 162. Writing for the majority, Justice Pivarnik concluded that the roadblock procedure was successful in detecting and preventing

drunken driving based on the available data and that the procedure was "a good example of [a] constitutionally valid roadblock operation [under the Fourth Amendment]." *Id.* at 163.

■ Accordingly, federal jurisprudence and Indiana cases applying the Fourth Amendment have made it clear that "[w]here a roadblock is constitutionally established, police may stop automobiles at such roadblocks without the necessity of probable cause or reasonable suspicion of illegal activity." *Covert v. State*, 612 N.E.2d 592, 593–94 (Ind.Ct.App.1993).[3] But as then Justice Shepard observed dissenting in *Garcia*, the supreme court neither mentioned nor purported to decide the rights assured under Article I, Section 11 of the Indiana Constitution. *Garcia*, 500 N.E.2d at 172–73 (Shepard, J. dissenting).

### Sobriety Checkpoints under Article I, Section 11

■ The United States Constitution establishes a minimum level of protection to citizens of all states. *Oregon v. Hass*, 420 .U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). That does not mean, however, that the analysis of our constitution begins "from the conclusive premise of a federal floor. Indeed, the fragile foundation of the federal floor as a bulwark against arbitrary action is clearly revealed when, as here, the federal floor falls below minimum state protection." *See Sitz II*, 506 N.W.2d at 217 (footnote omitted) (striking down use of highway sobriety checkpoints as violation of Michigan Constitution). A state is thus free as a matter of its own constitutional law to impose greater restrictions on police activity than those deemed minimal under federal law.[4]

---

3. Writing for the Court of Appeals, Judge Rucker noted that the defendant had waived any separate constitutional claim under Article I, Section 11 by failing to present sufficient argument or citation to legal authority. *Covert*, 612 N.E.2d at 593 n. 1.

4. It also makes pragmatic good sense to chart our own course and apply a separate state constitutional analysis rather than track the often unpredictable path of federal constitutional jurisprudence. Professor Akhil Reed Amar has said that Fourth Amendment law has become a "vast jumble" of complex and

*Id.; see, e.g., Pruneyard Shopping Ctr. v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). As Justice Brennan wrote:

> [T]he decisions of the [United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, *state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts, for only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees.*

William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 HARV. L.REV. 489, 502 (1977) (footnote omitted, emphasis added).

■■■■ Our supreme court has explained that when examining constitutional issues, claims based upon the Indiana Constitution should be analyzed separately from claims based upon its federal constitutional counterparts. *See Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind. 1996); *Collins v. Day,* 644 N.E.2d 72, 75 (Ind.1994); *see also* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights,* 22 IND. L.REV. 575 (1989). Thus, "[e]ven where an Indiana constitutional provision is substantially textually coextensive with that from another jurisdiction ... we may part company with the interpretation of the Supreme Court of the United States or any other courts based on the text, history, and decisional law elaborating the Indiana constitutional right." *Ajabu v. State,* 693 N.E.2d 921, 929 (Ind. 1998). Decisions of the Supreme Court and other federal courts construing similar federal constitutional provisions may be persuasive, "but Indiana courts should grant neither deference, nor precedential status to such cases when interpreting provisions of our own constitution." *Taylor v. State,* 639 N.E.2d 1052, 1053 (Ind.Ct.App. 1994). In sum, Indiana courts have the responsibility of independent constitutional analysis. *Id.*

■■■■ Questions arising under the Indiana Constitution should be resolved by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994). When construing the constitution, " 'a court should look to the history of the times, and examine the state of things existing when the constitution or any part thereof was framed and adopted, to ascertain the old law, the mischief, and the remedy.' " *Bayh v. Sonnenburg,* 573 N.E.2d 398, 412 (Ind.1991) (quoting *State v. Gibson,* 36 Ind. 389, 391 (1871)), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992). Because the intent of the framers is paramount in determining the meaning of a provision, we should consider the purpose which induced the adoption in order to ascertain what the particular constitutional provision was designed to prevent. *Boehm,* 675 N.E.2d at 321 (citations omitted). Keeping these rules of state constitutional construction in mind, we turn to the validity of sobriety checkpoints under Article I, Section 11.

Article I, Section 11, the search and seizure provision of the 1851 Indiana Constitution, states:

---

contradictory judicial pronouncements. *See* Akhil Reed Amar, *Fourth Amendment First Principles,* 107 HARV. L.REV. 757, 758 (1994). Even the critics of Amar's views agree that the United States Supreme Court's interpretation of the Fourth Amendment is "riddled with inconsistencies[.]" *See* Carol S. Steiker, *Second Thoughts About First Principles,* 107 HARV. L.REV. 820, 825 (1994).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

IND. CONST. art. I, § 11. This same provision appeared as Section 8 of the 1816 Indiana Constitution and was inserted in both constitutions without significant debate. *Moran v. State*, 644 N.E.2d 536, 539 (Ind.1994). The framers of the 1816 Indiana Constitution intended the search and seizure provision "to prevent abuses of the police power like those experienced at the hands of the British during colonial times."[5] *Id.* Moreover, the delegates present at the 1850 Constitutional Convention were "populist, anti-government Jacksonian Democrats" who were not only wary of police power but also of judicial authority. *See Price v. State*, 622 N.E.2d 954, 962 (Ind.1993).

It is well settled that the protections afforded by Article I, Section 11 may be more extensive than those afforded by the Fourth Amendment. *See Taylor*, 639 N.E.2d at 1053. In particular, while the language of Article I, Section 11 mirrors that of the Fourth Amendment, the state provision establishes an independent prohibition against unreasonable searches and seizures. *Rook v. State*, 679 N.E.2d 997, 1001 (Ind.Ct.App.1997). In *Moran*, our supreme court noted that the first clause of Article I, Section 11 "recognizes the dangers of abusive searches, with or without warrants" and thus interpreted that provision "as having ... a primary and overarching mandate for protections from unreasonable searches and seizures[.]" *Moran*, 644 N.E.2d at 539. The court determined that "the reasonableness of the official behavior must always be the focus of our state constitutional analysis." *Id.* As such, rather than employ federal concepts like the warrant requirement and probable cause requirement, our separate and distinct state constitutional analysis requires that the State bear the burden of showing, in the totality of the circumstances, that the intrusion by police was reasonable. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999) (citing *Brown*, 653 N.E.2d at 79–80). Article I, Section 11 is not a mere copy of the Fourth Amendment but stands on its own.

Automobiles are among the "effects" protected by Article I, Section 11. *Brown*, 653 N.E.2d at 79. Therefore, stopping a vehicle at a roadblock is a seizure under Article I, Section 11, even if the purpose of the stop is limited and the resulting detention is brief. *See Smith*, 638 N.E.2d at 1355; *see also Sitz I*, 496 U.S. at 450, 110 S.Ct. 2481 (identifying roadblock stop as seizure under Fourth Amendment). The State maintains in this case that the Indiana Constitution's requirement of reasonable police behavior is satisfied by the *Brown v. Texas* balancing test and urges us to adopt that test as applied to sobriety checkpoints in subsequent cases under the Fourth Amendment. Given our responsibility to undertake an independent state constitutional analysis, and in accordance with the clear language of Article I, Section 11 and the intent of its framers, we decline that invitation. We conclude instead that Article I, Section 11 requires probable cause or, at a minimum, individualized suspicion of criminal activity before the police may stop a motorist, and that absent either, a stop constitutes an unreasonable seizure as proscribed by the Indiana Constitution. In so holding, we

---

**5.** *See, e.g., Boyd v. United States*, 116 U.S. 616, 624–25, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which discusses the "writs of assistance" used by the British government to empower revenue officers to search, in their discretion, suspected places for smuggled goods. A critic of writs of assistance in 1761 pronounced them to be "the worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law, that ever was found in an English law book[.]" *Id.*

rely on the consistent recognition by our Indiana courts that either a valid warrant, probable cause, or reasonable suspicion is necessary to protect the people from abuses of police power and against unreasonable searches and seizures.

In *Moran*, our supreme court explained Article I, Section 11's preference for a warrant as follows:

> The state standard of reasonableness frequently requires that police action occur only with a judicial sanction.
>
> * * *
>
> *This preference for the warrant is based on the assumption that a warrant requirement would effectively encourage reasonable behavior on the part of government officials. It also reflects a well-grounded belief that many searches require a warrant in order to be reasonable.*
>
> * * *
>
> The decisions of this court prior to 1961, the date upon which the Fourth Amendment became applicable to the states, are most helpful. In them there is no overlapping of state and federal analysis. *They demonstrate that the purpose of Article I, [Section] 11 is to protect from unreasonable police activity, those areas of life Hoosiers regard as private. The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure.*

*Moran*, 644 N.E.2d at 539-40 (emphases added).

In *Taylor*, this court examined the question of whether a police detention of an individual violated Article I, Section 11. We concluded that the Indiana Constitution requires the detention to be reasonable and that even a brief police detention of an individual during investigation is reasonable only if the officer reasonably suspects that the individual is engaged in, or is about to engage in illegal activity. *Taylor*, 639 N.E.2d at 1054. We observed that the requirement of reasonable suspicion is satisfied "where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.* We thus held that the provisions of Article I, Section 11 provide limitations on investigatory stops consistent with the Fourth Amendment protections articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.*

Subsequently in *Brown v. State*, our supreme court reaffirmed Article I, Section 11's preference for a warrant when it struck down the stop of a defendant's car and subsequent search of his vehicle as unconstitutional. The court said:

> *The existence of a valid warrant to search and seize provides a preeminent form of support for a determination that the state standard of probable cause and reasonableness was met.*
>
> * * *
>
> ■ *When armed with probable cause, law enforcement officers are faced with a continuum of ostensibly reasonable activity, from doing nothing to search and seizure.* Seeking a warrant is a means for them to reduce the risk that their proposed intrusive activity will fall outside that continuum, and that evidence will have to be suppressed in court. In addition, the warrant provides the individual being searched with the comfort of knowing some official other than the police officer performing the search has determined its propriety.

*Brown*, 653 N.E.2d at 79-80 (emphases added). The supreme court nevertheless recognized that the use of a valid warrant is not dispositive of the reasonableness of a police intrusion. *Id.* at 79. Rather, "[t]he question here is whether, *in the totality of the[ ] circumstances,*[6] reliance by the po-

---

6. *Taylor, Brown v. State*, and later *Baldwin*, make clear that the reasonable suspicion

lice upon their own information in deciding to search [defendant's] car was reasonable." *Id.* at 79–80 (emphasis added).

Most recently in *Baldwin,* our supreme court held that a police officer may not stop a motorist for a possible seat belt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by Indiana statute. The court explained that this reasonable suspicion exists "where the officer observes the driver or passenger under circumstances (*e.g.,* bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seat belt[.]" *Baldwin,* 715 N.E.2d at 337. Writing for a unanimous court, Justice Sullivan declared that "the police cannot stop a motorist without the reasonable suspicion required by [Article] I, [Section] 11[.]" *Id.*[7]

■■■ The fundamental and underlying principle in all of these cases is indisputable: the Indiana Constitution creates an overriding preference for a warrant and, absent a warrant, police must have probable cause or individualized suspicion of criminal activity before they may conduct a search or seizure. While the United States Supreme Court has created a sobriety roadblock exception to the requirement of probable cause or reasonable suspicion, we decline to borrow from Fourth Amendment jurisprudence on this issue. Specifically, we will not forsake the minimum requirement of individualized suspicion to allow blanket suspicionless seizures of motorists traveling Indiana's public roadways. This is the only conclusion faithful to Indiana's constitutional heritage and tradi-

tions and consonant with the principles set forth in *Baldwin, Brown v. State, Taylor,* and *Moran. See* Randall T. Shepard, *The Maturing Nature of State Constitution Jurisprudence,* 30 VAL. U.L.REV. 421, 432–33 (1996) (noting that keystone of "independent state jurisprudence" is development of jurisprudence faithful to state's constitutional heritage and traditions).

■■■ Here, the record is uncontroverted that the police officers engaged in the sobriety checkpoint never observed Gerschoffer or any of the other sixty-nine motorists who were ordered into the checkpoint conduct themselves in a manner that would give rise to a reasonable and articulable suspicion of unlawful conduct. Indeed, the police had no knowledge or information that any motorist traveling on McKinley Avenue on the date and at the time in question had violated or might then be violating the law.

We cannot agree, as the State contends, that the *Brown v. Texas* balancing test is consistent with Indiana constitutional jurisprudence. Reasonableness is the touchstone of Indiana search and seizure law. In the complete absence of individualized suspicion of criminal activity, much less probable cause, the sobriety checkpoint is the very antithesis of a reasonable seizure under Article I, Section 11 and "cannot be distinguished from virtually any random stop made by law enforcement officers searching for various types of felons." *See Garcia,* 500 N.E.2d at 172 (Shepard, J. dissenting). A suspicionless roadblock seizure is inherently random, arbitrary and capricious, and there is nothing in the text or original meaning of Article I, Section 11 to suggest that the framers would have

---

analysis applies to the particularized information available to police regarding a suspect at the time and at the scene of the search or seizure. The "totality of the circumstances" must support the reasonable suspicion required for a police stop under Article I, Section 11. But in no sense does an evaluation of "the totality of the circumstances" incorporate general public concerns or interests. *Cf. Brown,* 443 U.S. at 50, 99 S.Ct. 2637.

7. The supreme court also approved of our earlier holding in *Taylor* and concluded that *Taylor*'s finding that Article I, Section 11 requires reasonable suspicion of criminal activity "comports with *Brown [v. State]*." *Baldwin,* 715 N.E.2d at 337.

considered such a seizure as anything other than unreasonable. The framers could not have intended for Indiana judges to abandon the constitutional principles of probable cause and later, reasonable suspicion, in favor of a three-part test invented by the federal courts.

■■■ We reject the rationalization that a sobriety checkpoint is a lawful exercise of police power simply because the guidelines for the checkpoint are designed at the supervisory level and the checkpoint is executed in the field by officers who have no independent discretion to determine who will be stopped. *See Sitz I*, 496 U.S. at 453, 110 S.Ct. 2481; *see Garcia*, 500 N.E.2d at 161. No amount of control or limited discretion can justify the seizure that takes place in the complete absence of probable cause or reasonable suspicion that a motor vehicle violation has occurred. Because the right to be protected from unreasonable searches and seizures is a personal right, *see Peterson v. State*, 674 N.E.2d 528, 533 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998), the proper inquiry is not whether the checkpoint is generally designed and administered in a "neutral" fashion, but whether, in its operation and effect, the seizure violates the rights of those persons who are detained. A so-called "neutral" roadblock is neutral only in the sense that the same unconstitutional seizure is perpetrated against all persons who are stopped.

Some courts have invoked "great public concern" about the danger of intoxicated drivers on our roadways as an excuse to manufacture new rules which have eroded the Fourth Amendment. *See Garcia*, 500 N.E.2d at 161–62; *see also Sitz I*, 496 U.S. at 451, 110 S.Ct. 2481; *Brown*, 443 U.S. at 50, 99 S.Ct. 2637. But our judiciary has no license to authorize the systematic violation of individual rights in the name of "great public concern," a theory of federal search and seizure law that finds no basis in the text, history, or well-settled interpretation of the Indiana Constitution. We will not sacrifice the rights guaranteed under Article I, Section 11 for an indeterminate social agenda of "great public concerns." [8]

The Indiana doctrine of constitutional interpretation has been that our constitution is a fundamental instrument, not to be stretched and strained *ad hoc* to meet "the exigencies and necessities of the moment." *Finney v. Johnson*, 242 Ind. 465, 472, 179 N.E.2d 718, 721 (1962). "It is a basic instrument which is rigid and firm and will withstand the emotional upheavals of the time," in the interest of protecting continually the rights it guarantees. *Id.* Constitutional interpretation must, therefore, be grounded on neutral principles that transcend the immediate result achieved. *See* Herbert Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv. L.Rev. 1, 15 (1959). As Justice Brennan remarked dissenting in *Sitz I*, "[C]onsensus that a particular law enforcement technique serves a laudable purpose has never been the touchstone of constitutional analysis." *Sitz I*, 496 U.S. at 459, 110 S.Ct. 2481 (Brennan, J. dissenting). Indeed, our constitution "was framed to be strictly observed by all public officials and particularly the courts as guardians of the citizens' rights stated therein." *Finney*, 242 Ind. at 472, 179 N.E.2d at 721. The State cannot combat drunken driving at the expense of the Indiana Constitution.

There is much disagreement in the case law over the degree to which sobriety roadblocks actually advance the public interest.[9] *See Brown*, 443 U.S. at 50, 99

---

8. In any event, the State has wholly failed to demonstrate, on this record, the presence of a "great public concern" that would justify a seizure without individualized suspicion of wrongdoing.

9. Several jurisdictions have invalidated roadblocks under independent state constitutional provisions. *See, e.g., State v. Henderson*, 114 Idaho 293, 756 P.2d 1057 (1988); *Sitz II*, 443 Mich. 744, 506 N.W.2d 209 (1993); *Ascher v. Commissioner of Pub. Safety*, 519 N.W.2d 183

S.Ct. 2637; *Garcia*, 500 N.E.2d at 162. Some courts have concluded that roadblocks yield positive results. *See, e.g., Ingersoll v. Palmer*, 43 Cal.3d 1321, 241 Cal. Rptr. 42, 743 P.2d 1299, 1311–1313 (1987); *see also* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 10.8(d) (3d ed.1996). Other courts have concluded that such procedures are not an efficient use of law enforcement resources and that police manpower would be better utilized if the officers required to operate a checkpoint were scattered on roving patrols throughout the community.[10] *See, e.g., State v. Henderson*, 114 Idaho 293, 756 P.2d 1057, 1060 (1988); *Pimental v. Department of Transp.*, 561 A.2d 1348, 1352 (R.I.1989). Even assuming that roadblocks were indisputably the most effective and efficient means of detecting and preventing drunken driving,[11] that would not immunize an otherwise unlawful seizure against Article I, Section 11's requirement of probable cause or reasonable suspicion. If enough people are stopped without probable cause or reasonable suspicion, undoubtedly some percentage of them will be found to have violated the law. But we cannot endorse a constitutional rule grounded on the rationale that the end justifies the means. The efficacy of a roadblock is clearly no justification for it.

■ An individual's rights to liberty, privacy and free movement under Article I, Section 11 are not absolute and must be balanced against society's right to protect itself. *See Taylor*, 639 N.E.2d at 1054. In striking the correct balance between a citizen's right to be let alone and the State's legitimate interest in law enforcement, "Indiana courts look to the reasonableness of the intrusion and permit brief investigatory stops *based upon reasonable suspicion of criminal activity.*" *See id.* (emphasis added). There are no state constitutional grounds for the dragnet seizure of motorists without probable cause or individualized suspicion of unlawful conduct. The minimum constitutional predicate for the seizure of a vehicle in Indiana is reasonable suspicion.[12] Nothing

(Minn.1994); *State v. Koppel*, 127 N.H. 286, 499 A.2d 977 (1985); *State v. Boyanovsky*, 304 Or. 131, 743 P.2d 711 (1987); *Pimental v. Department of Transp.*, 561 A.2d 1348 (R.I. 1989); *City of Seattle v. Mesiani*, 110 Wash.2d 454, 755 P.2d 775 (1988). Some courts have held that roadblocks are per se unconstitutional under their respective state constitutions (e.g., Rhode Island and Washington), while others have compared the effectiveness of roadblocks with less intrusive law enforcement methods and concluded that the state's interest in detecting drunken driving does not outweigh the intrusion on individual liberty or justify departure from the traditional requirement of individualized suspicion (e.g., Michigan, Minnesota, and New Hampshire).

10. Dissenting in *Sitz I*, Justice Stevens observed that the sobriety checkpoint at issue resulted in the arrest of only "a fraction of one percent of the drivers who [were] stopped, but there is absolutely no evidence that this figure represents an increase over the number of arrests that would have been made by using the same law enforcement resources in conventional patrols." *Sitz I*, 496 U.S. at 469, 110 S.Ct. 2481 (Stevens, J. dissenting) (footnote omitted). Justice Stevens concluded that the majority's analysis "resembles a business decision that measures the profits by counting gross receipts and ignoring expenses." *Id.*

11. Here, Coffie conceded that sobriety checkpoints are *not* as effective as "roving or wolfpack" patrols and testified that "[t]he majority of the sobriety checkpoints are basically set ... to remove drunk drivers; however, we usually don't end up with a great number of DUI arrests." In fact, the record reflects that of the seventy motorists who were directed through the checkpoint, only two were arrested for driving under the influence of alcohol.

12. If reasonable suspicion is required to stop a motorist for a seat belt violation, no less is required to stop a motorist under other circumstances. *See Baldwin*, 715 N.E.2d at 336. Indeed, the State argued in *Baldwin* that "The Indiana Constitution mandates that a law enforcement officer have a reasonable and articulable suspicion of a violation in order to legally stop a vehicle." *Id.* (quoting Attorney General's position in that case). Now, in an about-face, the State claims that the Indiana Constitution does not require reasonable suspicion and that the suspicionless seizure of a vehicle is a lawful exercise of police power. While the State has reversed its position, the constitutional mandate it recognized and ad-

more is required, and nothing less is allowed. As Justice DeBruler wrote dissenting in *Garcia:*

> [I]t is the time-honored requirement that there be an individualized, articulable suspicion of criminal intent or criminal conduct of a person, whether that person stands alone or within a group, which strikes *the correct balance* between the rights of the citizens or groups of citizens and their government's interest in exercising the power to seize.

*Garcia,* 500 N.E.2d at 163–64 (DeBruler, J. dissenting) (emphasis added).

In Indiana, there is still a presumption that Hoosiers are law-abiding citizens. Under our state constitution, a motorist is free to travel Indiana's public highways without unreasonable interference from the government,[13] and he is treated as a suspect only if his actions justify it. We will not sanction a police practice that systematically violates the presumption of innocence, a first principle of criminal law and procedure. The rights afforded under Article I, Section 11 are not mere second-class rights but indispensable freedoms.

vocated only a few months ago remains intact.

13. Our supreme court has said that "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Brown,* 653 N.E.2d at 80.

14. In this respect, we disagree with the trial court's conclusion that the sobriety checkpoint was unreasonable absent a warrant. Rather, the checkpoint was unreasonable because it was conducted without probable cause or reasonable suspicion of criminal activity. We nevertheless agree with the trial court that there were no exigent circumstances that would have justified the detention of Gerschoffer at the checkpoint. While our holding today need not address the issue of exigent circumstances, our decision should not be understood to preclude a checkpoint or roadblock associated with a specific criminal investigation where time is of the essence, such as one established to apprehend a robbery suspect or an escaped convict or to thwart a recent abduction.

*See Brinegar v. United States,* 338 U.S. 160, 180, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (Jackson, J. dissenting) (discussing Fourth Amendment protections). "Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." *Id.*

### CONCLUSION

■■■■ In sum, Article I, Section 11 of the Indiana Constitution prohibits police stops of motorists except on the reasonable suspicion required by *Baldwin, Brown v. State,* and *Taylor. See Baldwin,* 715 N.E.2d at 337; *Brown,* 653 N.E.2d at 79–80; *Taylor,* 639 N.E.2d at 1054. We hold, therefore, that a sobriety checkpoint such as the one at issue here, which is conducted absent probable cause or reasonable suspicion of illegal activity, constitutes an unreasonable seizure as proscribed by Article I, Section 11.[14] The constitutional heritage of Indiana has never recognized the right of the State, without any level of suspicion whatsoever, to detain members of the population at large for criminal investigatory purposes.[15] *See Sitz II,* 506

15. Independent of the sobriety roadblock exception, federal jurisprudence has also created a "special needs" exception to the rule of probable cause or individualized suspicion for regulatory searches with objectives other than crime detection. *See, e.g., Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 620–21, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (upholding drug and alcohol testing of railroad employees to ensure safety of railroads); *see also Prouse,* 440 U.S. at 663 n. 26, 99 S.Ct. 1391 (observing that its decision to strike down random stops of vehicles to apprehend unlicensed drivers and unsafe vehicles as unconstitutional did not affect permissibility of "roadside truck weigh-stations and inspection checkpoints, at which some vehicles may be subject to further detention for safety and regulatory inspection than are others."). The "special needs" exception to the Fourth Amendment suspends the requirement of probable cause or reasonable suspicion in limited cases where "special needs, beyond the normal need for law enforcement," make such requirements "impracticable." *See Purdy v. State,* 708 N.E.2d 20, 22 (Ind.Ct.App. 1999) (quoting *Griffin v. Wisconsin,* 483 U.S.

N.W.2d at 223–24. We decline to create a sobriety roadblock exception to the Indiana Constitution. We affirm the trial court's determination that the checkpoint was unconstitutional under Article I, Section 11 and hold that the trial court did not err when it suppressed the evidence of Gerschoffer's intoxication.

Affirmed.

SULLIVAN, J., and BROOK, J., concur.

868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Our holding today does not concern the "special needs" exception. Rather, our holding is limited to an analysis of the propri- ety of the Fourth Amendment roadblock exception which finds its basis in *Brown v. Texas* and *Sitz I,* an exception we decline to adopt for Indiana.