Patricia **BALDWIN**, Prosecuting Attorney of Hendricks County, Roy Waddell, Sheriff of Hendricks County, Appellants (Defendants below),

v.

Rebecca **REAGAN**, James Lewis, Brent Steele, John M. Waterman, R. Michael Young, Gary Hofmeister, Indianapolis Urban League, Inc., Benjamin Saxon, Mason Grove, Daniel Gilmore, Leon G. Coward, William L. Tolbert, Carmel Motorists Association, James Phend, Mary C. Barton, Larry Vaughn and Vern Kasper, Appellees (Plaintiffs below).

No. 32S00–9812–CV–767.

Supreme Court of Indiana.

July 6, 1999.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, for appellant.

Melina Maniatis Kennedy, Kelly M. Lamm, Johnson Smith Pence Wright & Heath, Indianapolis, for Amicus Curiae Indiana Safety Belt Coalition.

John Price, John R. Price and Associates, Indianapolis; Bruce A. Stuard, Indianapolis, for appellee.

SULLIVAN, Justice.

The plaintiffs contend that the Indiana Seatbelt Enforcement Act authorizes the police to stop motorists in violation of their state constitutional rights against unreasonable searches and seizures. We agree that the police may not enforce the seat belt law in violation of these constitutional rights. In this opinion, we hold that an Indiana police officer may not stop a motorist to enforce the seat belt law unless the officer observes circumstances that would cause an ordinary person to agree that the driver or passenger is not wearing a seat belt. However, because the Seatbelt Enforcement Act can be applied in conformity with this holding, we conclude that it is constitutional.

### Background

It is important to understand that the plaintiffs in this lawsuit do not challenge or seek to overturn the Indiana law requiring seat belt use. Instead, this lawsuit is about another provision of Indiana law governing enforcement of the seat belt use requirement.

In 1985, the Indiana General Assembly added a new chapter to the Indiana Code mandating that drivers and passengers in motor vehicles wear seat belts in certain circumstances. P.L. 122–1985, § 1, now codified at Ind.Code § 9–19–10–2.[1] When the

---

1. Ind.Code § 9–19–10–2 provides: "Each front seat occupant of a passenger motor vehicle that

is equipped with a safety belt meeting the standards stated in the Federal Motor Vehicle Safety

legislature passed this law, it provided in section 3 of the new chapter: "A person may not be stopped, inspected, or detained solely to determine compliance with this chapter." P.L. 122–1985, § 1, now codified at Ind.Code § 9–19–10–3.[2] The courts held that this provision prohibited a police officer from simply "[w]atching for and then pulling over" a passing driver who was not wearing a seat belt. *State v. Eilers*, 697 N.E.2d 969, 971 (Ind.Ct. App.1998).

In 1998, the legislature amended this provision twice. First, P.L. 57–1998 added a new section 2.5 to the seat belt chapter, requiring children between the ages of four and twelve properly to be fastened and restrained by a child passenger restraint system or safety belt.[3] It then changed section 3 to provide that a "person may not be stopped, inspected, or detained solely to determine compliance with this chapter" except for "a stop, an inspection, or a detention of a person to determine compliance with" section 2.5. Later in the same session of the legislature, section 3 was rewritten in P.L. 116–1998 to provide: "A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." We will refer to section 3 (Ind. Code § 9–19–10–3) as amended in P.L. 116–1998 as the "Seatbelt Enforcement Act."

Shortly after Governor O'Bannon signed P.L. 116–1998 into law, the plaintiffs filed this lawsuit in the Hendricks Circuit Court. They sought a declaratory judgment that the Seatbelt Enforcement Act violated the federal and state constitutions and a permanent injunction barring its enforcement. The Hendricks Circuit Court granted the plaintiffs a temporary restraining order prohibiting the defendants from enforcing the law.

Utilizing the fact that the plaintiffs claimed that the Seatbelt Enforcement Act violated the federal constitution in several respects, the defendants transferred the lawsuit to federal court and sought to have the temporary restraining order dissolved. They were successful. In dissolving the restraining order, United States District Court Judge John D. Tinder issued a written decision addressing many of the issues in this case. We find ourselves largely in agreement with Judge Tinder's analysis.

After Judge Tinder ruled, the plaintiffs amended their complaint to eliminate all their contentions that the Seatbelt Enforcement Act violated the federal constitution and asked to have the case transferred back to our state court system. This request was granted and the case returned to Hendricks County. It was later transferred from the Circuit Court to a Superior Court.

Following arguments on cross-motions for summary judgment, the trial court held that the Seatbelt Enforcement Act violated art. I, § 11, of the Indiana Constitution and permanently enjoined the defendants from enforcing the statute. The defendants, represented by the Attorney General, appeal those rulings. Under Ind. Appellate Rule 4(A)(8), this court has exclusive jurisdiction over the appeal.[4]

### Discussion

The Seatbelt Enforcement Act provides:

A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle

---

Standard Number 208 (49 C.F.R. 571.208) shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." Prior to 1991, this provision was codified at Ind.Code § 9–8–14–1.

**2.** Prior to 1991, this provision was codified at Ind.Code § 9–8–14–3.

**3.** Ind.Code § 9–19–10–2.5 provides: "A person who operates a passenger motor vehicle that is equipped with a safety belt meeting the standards stated in the Federal Motor Vehicle Safety Standard Number 208 (49 C.F.R. 571.208) in which

there is a child commits a Class D infraction if: (1) the child is at least four (4) years of age but less than twelve (12) years of age; and (2) the child is not properly fastened and restrained by: (A) a child passenger restraint system; or (B) a safety belt."

**4.** Ind. Appellate Rule 4(A)(8) provides: "The Supreme Court shall have exclusive jurisdiction of ... [a]ppealable cases where a state or federal statute has been declared unconstitutional in whole or in part."

may not be inspected, searched, or detained solely because of a violation of this chapter.

Ind.Code § 9–19–10–3 (as amended by P.L. 116–1998, § 2). Article I, § 11, of the Indiana Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The plaintiffs argue that the Seatbelt Enforcement Act violates art. I, § 11, because it:

> authorizes and enables law enforcement officers to stop vehicles without probable cause. The language of the statute[ ] gives law enforcement officers unbridled discretion to stop motorists. An officer does not need probable cause under the new statute[ ] that a motorist is not wearing a seat belt in order to stop the motorist. The officer is empowered to make the stop for the purpose of determining that the motorist and passengers are wearing passenger restraints, even in cases where the officer has no reason to believe that the motorist or passenger are not wearing restraints.

(R. at 212; Second Am. Compl. for Decl. J. at 5.) The plaintiffs emphasize their contention by predicting that the Seatbelt Enforcement Act will result in lawlessness by Indiana police officers:[5]

> The statutory authorization to law enforcement officials to make stops without probable cause, to "determine compliance"

with the passenger restraint law, is not significantly different from prior violations of basic human rights imposed on motorists and pedestrians in this and other countries and in this and other times. The ability of a law enforcement official to stop a vehicle, pursuant to Indiana statute, in order to "determine compliance" with the requirement of wearing a seat belt, is an open and obvious invitation to officials to "inspect your papers," and other similar violations of basic privacy rights....

> Enforcement of the new statute[ ] could create significant risks for high risk/at-risk groups for discriminatory targeting to accomplish the pretext of searching for weapons and drugs. Such groups include youths, minorities, and females who travel alone, who are also at high risk of sexual harassment/assault.

(R. at 212–13; Second Am. Compl. for Decl. J. at 5–6.)

## I

### A

The plaintiffs contend that art. I, § 11, prohibits an Indiana police officer from stopping a motorist to check whether the driver or passengers are wearing their seat belts unless the police officer has "probable cause" to believe that they are not. The Attorney General does not disagree, although he phrases his analysis slightly differently: "The Indiana Constitution mandates that a law enforcement officer have a reasonable and articulable suspicion of a violation in order to legally stop a vehicle." (R. at 384; Mem. of Law in Resp. to Pls.' Mot. for Summ. J. and in Supp. of Def. Baldwin's

---

5. Judge Tinder took issue with the plaintiffs' prediction of police lawlessness as follows:

Another undercurrent in the Plaintiffs' arguments is that the amended seat belt law will inevitably result in abuses by law enforcement officers, regardless of any reasonableness requirements imposed be either Constitution or the courts. However, this court refuses to accept the Plaintiffs' invitation to presume that law enforcement officers will violate the law in the future. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 104–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding plaintiff did not have standing because for him to have standing required the Court to assume that law

enforcement officers would violate the law in the future). It makes no sense to assume that while officers have the self-control to observe Fourth Amendment guidelines with respect to the enforcement of numerous other traffic offenses, they somehow will lose that control if allowed to stop motorists for seat belt violations. Indeed, a presumption that law enforcement officers will break the law borders on the offensive, especially in the case of a facial challenge to a statute.

United States District Court Entry Discussing Mot. to Dissolve T.R.O. at 16–17. (R. at 246–47.) We are inclined to agree.

Cross-mot. for Summ. J. at 8.) Indeed, the Attorney General uses the expression "probable cause" interchangeably with "reasonable and articulable suspicion" at several points. *Id.*

■ We find it necessary to observe that even though the plaintiffs contend that the Seatbelt Enforcement Act violates art. I, § 11, of the Indiana Constitution, both they and the Attorney General largely use federal Fourth Amendment analysis and authority in pressing their arguments. But in *Brown v. State,* 653 N.E.2d 77 (Ind.1995), this Court enunciated a separate and distinct method of analysis for claims of search and seizure violations of the state constitution. Rather than employ federal concepts like the warrant requirement and probable cause requirement, we require instead that the State bear the burden of showing that, in the totality of the circumstances, the intrusion was reasonable. *Id.* at 79–80.

■ Since *Brown,* we have not had an occasion to define further the reasonableness requirement. However, shortly before we decided *Brown,* Judge Kirsch of the Court of Appeals, applying independent state constitutional analysis, examined the question of whether a brief police detention of an individual violated art. I, § 11. *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994). As we were to do in *Brown,* Judge Kirsch found that the constitutional provision required the detention to be reasonable. He went on to conclude that a brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Taylor,* 639 N.E.2d at 1054. We find *Taylor* comports with *Brown.*

■ Applying these principles of Indiana constitutional law to the case before us, we hold that a police officer may not stop a motorist in Indiana for a possible seat belt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law. This reasonable suspicion exists where the officer observes the driver or passenger under circumstances (*e.g.,* bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seat belt as required by law.

### B

The fact that the police cannot stop a motorist without the reasonable suspicion required by art. I, § 11, however, does not render the Seatbelt Enforcement Act unconstitutional. For two reasons, we hold that it is constitutional.

### B–1

■ The Plaintiffs contend that the Seatbelt Enforcement Act is unconstitutional on its face. When a party claims that a statute is unconstitutional on its face, the claimant assumes the burden of demonstrating that there are no set of circumstances under which the statute can be constitutionally applied. *Reno v. Flores,* 507 U.S. 292, 301, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Although we have never explicitly said that this principle applies to state constitutional analysis as well as federal, we have suggested as much. *See State v. Sproles,* 672 N.E.2d 1353, 1360 (Ind. 1996); *Citizens Nat'l Bank of Evansville v. Foster,* 668 N.E.2d 1236, 1242 (Ind.1996). We now so hold.

■ As discussed above, art. I, § 11, prohibits police stops of motorists except on the reasonable suspicion required by *Brown* and *Taylor.* The Seatbelt Enforcement Act does not—indeed, as a matter of bedrock constitutional law cannot—relieve the police from the obligations of art. I, § 11. So long as the police comply with art. I, § 11, the Seatbelt Enforcement Act can be constitutionally applied. It is not unconstitutional on its face.

### B–2

■ A second way of analyzing this problem produces the same result. In our

separation of powers democracy, the constitution empowers the legislative branch to make law. *Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 107 (Ind. 1998). For this reason, every statute stands before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing. *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996) (construing art. X, § 1, of the Indiana Constitution and citing *Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992); *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992); *Eddy v. McGinnis,* 523 N.E.2d 737, 738 (Ind.1988); and *Miller v. State,* 517 N.E.2d 64, 71 (Ind.1987)). If there is more than one reasonable interpretation of a statute, at least one of which is constitutional, we will choose that path which permits upholding the act. *Price v. State,* 622 N.E.2d 954, 963 (Ind.1993) (construing art. I, § 9, of the Indiana Constitution and citing *State ex rel. Brubaker v. Pritchard,* 236 Ind. 222, 138 N.E.2d 233 (1956)).

The crux of the plaintiffs' argument is that the language "to determine compliance" in the Seatbelt Enforcement Act gives the police discretion—discretion unrestrained by the Constitution or other law—to stop motorists to see if they or their passengers are buckled up. It is not at all clear to us that this interpretation of the statute is correct.

For example, the Attorney General maintains that in adopting the Seatbelt Enforcement Act, the legislature intended the new statute to limit, rather than expand, police authority in respect of seat belt enforcement stops. More specifically, the legislature's principal concern could have been circumscribing the power of police to use a seat belt stop as an opportunity to inspect, search, or detain on other grounds, even if federal constitutional law would permit such a stop.

This interpretation strikes us as reasonable in a historical context. In 1996 (about two years before the Seatbelt Enforcement Act was passed), the United States Supreme Court held in *Whren v. United States* that the Fourth Amendment of the United States Constitution did not restrict the ability of the police to make "pretextual" stops of motorists—stops where the police do "under the guise of enforcing the traffic code what they would like to do for other reasons." 517 U.S. 806, 814, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).[6] *Whren* particularly heightened concern over police use of traffic stops as pretext for racially-motivated searches and detentions, the so-called driving-while-black-or-brown "offense." *See, e.g.,* Derek S. Burrell, *Driving While Black: A Y1K Problem,* Indiana Lawyer, May 26, 1999, at 4 (discussing *Whren* ). In any event, *Whren* was almost immediately used to authorize the admission of evidence seized pursuant to a seat belt stop. *See, e.g., United States v. Fields,* 72 F.3d 1200, 1212 (5th Cir.) (upholding against federal constitutional challenge the impoundment and inventory search of a vehicle stopped for a seat belt violation where

---

**6.** Since *Whren,* the United States Supreme Court has been active in deciding cases involving automobile searches and seizures. In nearly every case (one exception), the high court found the police search at issue to be constitutional. *See Maryland v. Dyson,* —— U.S. ——, 119 S.Ct. 2013, —— L.Ed.2d —— (1999) (per curiam) (holding that the "automobile exception" to the Fourth Amendment's warrant requirement is satisfied by probable cause even if exigent circumstances are not present); *Florida v. White,* 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999) (holding that the Fourth Amendment's warrant requirement does not prohibit police from seizing an automobile from a public place upon probable cause that the vehicle is forfeitable contraband); *Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (holding that the Fourth Amendment does not prohibit police with probable cause to search an automobile from inspect-

ing passengers' belongings found in the vehicle that are capable of concealing the object of the search); *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (holding that the Fourth Amendment does not prohibit police who stop a motorist for speeding from ordering passengers out of the vehicle pending completion of the stop); *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (holding that the Fourth Amendment does not require police to advise a motorist stopped for speeding that he or she is "free to go" before the motorist's consent to search will be recognized as voluntary); *Pennsylvania v. Labron,* 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam) (same as *Maryland v. Dyson* ). *But see Knowles v. Iowa,* 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (holding that the Fourth Amendment prohibited a police search incident to a speeding citation).

driver had not updated the address on his license and did not have proof of insurance), *cert. denied*, 519 U.S. 807, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996).

Under the interpretation of the Seatbelt Enforcement Act urged by the Attorney General, the second sentence of the Seatbelt Enforcement Act is of prime importance;[7] the first sentence is no more than an introduction. Read this way, the statute requires that when a stop to determine seat belt law compliance is made, the police are strictly prohibited from determining anything else, even if other law would permit. The Attorney General emphasized this point at oral argument by saying that he thought the statute could be read to prohibit a police officer making a seat belt stop from even asking the driver for consent to search the vehicle or its occupants.[8]

█ We believe the Attorney General's interpretation of the Seatbelt Enforcement Act—that it was intended to provide motorists with protection from the pretextual seat belt searches and seizures that *Whren* authorizes—to be reasonable and constitutional.[9]

Because there is a reasonable interpretation of the act which is constitutional, we find it so, at least with respect to this facial challenge.[10]

## II

In addition to their contention that the Seatbelt Enforcement Act violates art. I, § 11, the plaintiffs also asserted that the Seatbelt Enforcement Act and another statute, Ind.Code § 34–28–5–3, were unconstitutional in several other respects.

### A

█ As discussed in *Background, supra,* Ind.Code § 9–19–10–3 was amended twice during the 1998 session of the Indiana General Assembly. The parties acknowledge that the first passed of these amendments, contained in P.L. 57–1998, conflicts with the second, contained in P.L. 116–1998. The plaintiffs contend that this situation, *i.e.,* the legislature amending the same code section in conflicting ways in the same session, rendered the statute unconstitutional because of

---

7. As set forth above, the Seatbelt Enforcement Act provides: "A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter."

8. Although the consent issue is not before us today, we are inclined to think that this view is consistent with the statute's language that "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of" a seat belt stop.

9. Judge Tinder suggested two other alternative readings of the Seatbelt Enforcement Act, both of which we also find reasonable and constitutional:

The 1991 version of the seat belt law stated, "A person may not be stopped, inspected, or detained solely *to determine compliance* with this chapter." Ind.Code § 9–19–10–3 (amended 1998) (emphasis added). In 1998, the Indiana General Assembly twice amended the statute, but retained the phrase "stopped ... *to determine compliance* with this chapter." The final version of the statute reads in part: "A vehicle may be stopped *to determine compliance* with this chapter." Ind.Code Ann. § 9–19–10–3 (West 1998) (passed as P.L. 116–1998, § 2) (emphasis added). A reasonable interpretation of the amended seat belt law is that the phrase

"to determine compliance" was retained for purposes of explicitly negating the previous version of the statute. It is less reasonable to assume that the phrase was retained to negate portions of the U.S. and Indiana Constitutions.

Another reasonable explanation for the phrase is that there could be times when an officer has probable cause to stop a motorist for a seat belt law violation but still will need to have more information before determining that there has been a violation of the statute. For example, if an officer sees the driver of a non-exempt vehicle not wearing his seat belt, then the officer may stop the vehicle. But upon questioning, the officer could learn that the driver is exempted from the statute for medical reasons. Thus, while there was in fact no violation of the statute, the officer had probable cause to determine compliance.

United States District Court Entry Discussing Mot. to Dissolve T.R.O. at 18–19. (R. at 248–249.) (footnote omitted).

10. Plaintiffs correctly observe that even in an effort to save a statute from constitutional infirmity, a court cannot effectively rewrite it. *Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 108 n. 21 (Ind.1998) (citing *Grody v. State,* 257 Ind. 651, 659–60, 278 N.E.2d 280, 285 (1972)). At the same time, it is a fact of judicial life that statutes are sometimes susceptible to differing reasonable interpretations without any "rewriting." We find that to be the case here.

its "extreme vagueness." While the trial court did not explicitly hold the Seatbelt Enforcement Act unconstitutional on this basis, it did express sympathy for the plaintiffs' position. (R. at 417; Order on Pls.' Compl. for Decl. J. and Mot. for Summ. J. and Defs.' Cross-mot. for Summ. J. at 3.)

We previously have encountered situations where the legislature has amended the same section of the Indiana Code more than once in the same session. *See, e.g., Smith v. State,* 675 N.E.2d 693, 695 (Ind.1996); *Bayh v. Indiana State Bldg. & Constr. Trades Council,* 674 N.E.2d 176, 178 (Ind.1996). In *Smith,* we explained how such situations are handled:

> [T]here is an established rule of statutory construction that "as between two inconsistent acts passed by the same session of the legislature, even if they become effective at the same time, the one subsequently passed prevails." *Milk Control Board v. Pursifull,* 219 Ind. 49, 36 N.E.2d 850, 852 (Ind.1941); *see also Houtchens v. Lane,* 246 Ind. 540, 206 N.E.2d 131, 134 (Ind. 1965) (stating that "[w]here there is a conflict between statutes, the more recent statute is controlling ..."); 82 C.J.S. *Statutes* § 384 (1953); 26 I.L.E. *Statutes* § 87,161 (1960).

675 N.E.2d at 696. Public Law 116–1998 was passed subsequent to P.L. 57–1998. Applying the rule enunciated in *Smith,* P.L. 116–1998 is effective. *See State v. Eilers,* 697 N.E.2d 969, 970 n. 1 (Ind.Ct.App.1998). There is no violation of the state constitution here.

### B

The plaintiffs argue that Ind.Code § 34–28–5–3 violates art. I, § 11, of the Indiana Constitution on its face.[11] That statute provides:

> Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to: (1) inform the person of the allegation; (2) obtain the person's: (A) name, address, and date of birth; or (B) driver's license, if in the person's possession; and (3) allow the person to execute a notice to appear.

*Id.* We refer to Ind.Code § 34–28–5–3 as the "Good Faith Belief Act" in the balance of this opinion. The plaintiffs contend that by authorizing a police officer to detain a motorist based on the officer's good faith belief, the statute "allows a wholly subjective standard, far less than the objective standard required for probable cause."

The trial court found that the Good Faith Belief Act does not violate art. I, § 11. We agree. As discussed *supra* with respect to the Seatbelt Enforcement Act, this statute is subject to the constitutional limitations enunciated in *Brown* and *Taylor:* a brief police detention of an individual during investigation is reasonable and permitted under art. I, § 11, if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity. The reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. As discussed above, art. I, § 11, prohibits police stops of motorists except on the reasonable suspicion required by *Brown* and *Taylor.* As is the case with the Seatbelt Enforcement Act, the Good Faith Belief Act cannot relieve the police from the obligations of art. I, § 11. And so long as the police comply with art. I, § 11, the Good Faith Belief Act can be constitutionally applied. It is not unconstitutional on its face.

### C

The plaintiffs contended in their complaint that the Seatbelt Enforcement Act and the

---

11. As we read the record, the plaintiffs did not contend that Ind.Code § 34–28–5–3 was unconstitutional at the outset of this litigation. As the text discusses, this statute generally authorizes a police officer to detain a motorist for an infraction if the officer "believes in good faith" that the person has committed an infraction. Our sense of the record is that at the hearing in federal court, the Attorney General pointed out that any seat belt stops would be subject to the good faith belief limitation of Ind.Code § 34–28–5–3. After that, the plaintiffs amended their complaint to claim that Ind.Code § 34–28–5–3 itself is unconstitutional.

Good Faith Belief Act also violated art. I, §§ 2, 3, and 9 of the Indiana Constitution.[12] The plaintiffs also contended in their complaint that the Seatbelt Enforcement Act violated art. I, § 23, of the Indiana Constitution.[13] The trial court did not address these claims in its decision and the plaintiffs do not raise these issues in this appeal. For this reason, we consider them moot.

### Conclusion

The judgment of the trial court declaring the Seatbelt Enforcement Act (Ind.Code § 9–19–10–3) unconstitutional is reversed and the permanent injunction with respect thereto is dissolved. The judgment of the trial court holding the Good Faith Belief Act (Ind.Code § 34–28–5–3) constitutional is affirmed.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

**12.** Article I, § 2, provides: "All people shall be secured in the natural right to worship almighty God, according to the dictates of their own consciences."

Article I, § 3, provides: "No law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience."

Article I, § 9, provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for abuse of that right, every person shall be responsible."

**13.** Article I, § 23, provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."