**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REGINALD SPINKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1206-CR-314 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda Brown, Judge
Cause No. 49F10-1107-CM-50556

**February 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Reginald Spinks appeals his conviction of Carrying a Handgun Without a License[1] as a Class A misdismeanor. Spinks raises the following restated issues for our review:

1. Did the trial court abuse its discretion in admitting evidence discovered during the traffic stop for a seat belt violation?

2. Did the trial court err by denying a motion for mistrial?

We affirm.

On July 16, 2011, during Black Expo weekend, Reginald Spinks, a Louisville, Kentucky resident, drove to Indianapolis for the event. Indianapolis Metropolitan Police Department Officer Bradley Gosnell was patrolling downtown Indianapolis in his fully marked patrol car on that date. When he observed Spinks's 1972 green Buick Skylark he noticed that Spinks was not wearing a seatbelt and initiated a traffic stop. Officer Gosnell asked Spinks for his driver's license and vehicle registration. After Spinks handed Officer Gosnell his driver's license, he reached toward his glove compartment to retrieve his registration information. When Spinks opened the glove compartment, Officer Gosnell noted a green box inside the glove compartment, which through Officer Gosnell's training and experience he knew to be similar to boxes in which new handguns are sold.

Officer Gosnell asked Spinks whether there was a weapon in the car, and Spinks responded that there was. When asked if he had a handgun license, Spinks replied that he did not. Officer Gosnell then took Spinks's license, registration, and gun to his cruiser and determined that Spinks did not have an Indiana gun permit. The gun was a Smith and

---

[1] Ind. Code Ann. § 35-47-2-1 (West, Westlaw current through 2012 2nd Reg. Sess.).

Wesson, black, nine millimeter semi-automatic handgun that was loaded with five live rounds in the magazine, but none in the chamber.

Spinks told Officer Gosnell that he was in the process of obtaining a firearms permit in Kentucky. He had passed the course and received a signed certificate of completion on July 10, 2011. While Spinks had applied for a license to carry a concealed deadly weapon in Kentucky, he had not received it at the time of the offense in Indiana, but subsequently received a license from the Commonwealth of Kentucky. Spinks told Officer Gosnell that his understanding of Kentucky law was that he was allowed to transport a gun, loaded or unloaded, in a car as long as it was in a box in the glove compartment. He further stated that he believed that Indiana and Kentucky recognized each other's gun laws. After this conversation, Officer Gosnell placed Spinks in handcuffs.

The State charged Spinks with class A misdemeanor carrying a handgun without a license. On the day of his jury trial, Spinks moved to suppress the handgun, but that motion was denied at the conclusion of an evidentiary hearing on the matter. At the conclusion of the trial, the jury found Spinks guilty as charged. The trial court discharged the jury and then notified counsel that a letter had been tendered by four of the jurors along with the verdict. The letter read as follows:

> Honorable Judge Brown,
>
> We believe that Mr. Reginald Spinks violated the law as it is written. However, we believe the violation was not intentional and without malice. We urge the court to be as lenient as possible in determining Mr. Spinks' sentence.

*Appellant's Appendix* at 122. Spinks moved for a mistrial, which was denied by the trial court. In ruling on the motion the trial court indicated that it interpreted the letter from the jury as a request for leniency at sentencing. The trial court sentenced Spinks to 365 days in jail with 361 days suspended with four days of credit. Spinks now appeals.

1.

Spinks argues that the trial court erred by admitting the handgun in evidence at trial. In particular, Spinks argues that Officer Gosnell's inquiry about the presence of weapons was inappropriate under Indiana's Seatbelt Enforcement Act.[2] Spinks also claims that admission of the handgun was an abuse of discretion because it was discovered in an unreasonable manner under the article 1, section 11 of the Indiana Constitution.

The decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Dixon v. State*, 967 N.E.2d 1090 (Ind. Ct. App. 2012). We will not reverse a trial court's ruling on the admissibility of evidence absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Johnson v. State*, 831 N.E.2d 163 (Ind. Ct. App. 2005), *trans. denied*. In making this determination, the court on review will consider the evidence in favor of the trial court's ruling and unrefuted evidence in a defendant's favor. *Sallee v. State*, 777 N.E.2d 1204 (Ind. Ct. App. 2002).

I.C. § 9-19-10-3.1(a) provides in pertinent part as follows:

---

[2] Ind. Code Ann. § 9-19-10-3.1 (West, Westlaw current through 2012 2nd Reg. Sess.).

4

> a vehicle may be stopped to determine compliance . . . but a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter.

*See also Baldwin v. Reagan*, 715 N.E.2d 332 (Ind. 1999) (police may initiate a traffic stop based on noncompliance with seatbelt requirements). Although police officers are not permitted to fish for evidence of other crimes while conducting a stop to determine seat belt compliance, officers are not impeded from investigating beyond that necessary to determine compliance if the circumstances warrant such activity. *Baldwin v. Reagan*, 715 N.E.2d 332. "[A] brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, illegal activity." *Id.* at 337. An officer's suspicion is reasonable if the facts known to the officer coupled with the reasonable inferences arising from those facts would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Baldwin v. Reagan*, 715 N.E.2d 332. The burden is on the State, however, to show that the intrusion was reasonable under the totality of the circumstances. *State v. Richardson*, 927 N.E.2d 379 (Ind. 2010).

Here, Officer Gosnell testified that he initiated the stop based upon his observation that Spinks was not wearing a seatbelt. Spinks argues that the officer's question about the presence of weapons in the vehicle, however, was unreasonable under the totality of the circumstances given Spinks's cooperative behavior after the initial stop. Indeed, Officer Gosnell testified that he was not concerned for his safety and that he believed that Spinks was merely reaching for his registration and not the green box in the glove compartment. Spinks

contends that based upon this testimony the State did not meet its burden of establishing that the intrusion was reasonable under the totality of the circumstances. We disagree.

Officer Gosnell was patrolling the bar district of downtown Indianapolis as part of an Event Response Group for the Indiana Black Expo Summer Celebration. After making the initial stop for the suspected seatbelt compliance violation, Officer Gosnell observed a green box when Spinks attempted to retrieve his registration information. In the officer's training and experience, green boxes such as this one were used in the sale of new handguns. Although Spinks was cooperative in doing so, he responded that there was a weapon in his car and that he did not have a handgun license. From these facts and the inferences from those facts, it was reasonable to suspect that criminal activity had already or was about to occur. We believe that the State met its burden of establishing that the intrusion was reasonable under the totality of the circumstances under the Indiana Seatbelt Enforcement Act. The trial court's admission of the handgun in evidence did not constitute an abuse of discretion.

We now turn to Spinks's argument brought under article 1, section 11 of the Indiana Constitution. That section reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield*

*v. State*, 824 N.E.2d 356 (Ind. 2005).  Evaluation of the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure.  *Id.*  Although there may be other relevant considerations which are unique due to differing circumstances, in general, the reasonableness of a search or seizure turns on a balance of:  1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.  *Id.*

Turning to the case at hand, the search was reasonable under the Indiana Constitution. There was a significant degree of concern, suspicion, or knowledge that a violation had occurred because Officer Gosnell saw a green box, which through his training and experience, he believed contained a gun in Spinks's glove compartment.  The degree of intrusion on Spinks's activities was minimal because Spinks was already stopped for a check to see if he was in compliance with Indiana's Seatbelt Enforcement Act.  The officer had asked for Spinks's driver's license and registration in order to determine if everything was in order.  The determination of whether Spinks had a valid license to carry the handgun occurred during the same time.  The extent of law enforcement needs was high given the admission that Spinks was in possession of a weapon, at a large event in downtown Indianapolis where the risk of harm to others was great.  The trial court did not abuse its discretion in admitting the handgun in evidence under Indiana constitutional considerations.

2.

Spinks also challenges the trial court's denial of his motion for a mistrial based upon the letter signed by four of the six jurors, which was tendered to the trial court along with the jury's guilty verdict. The standard of review with respect to this issue is well settled and is as follows:

> Whether to grant or deny a motion for a mistrial is a decision left to the sound discretion of the trial court, as that court is in the best position to assess the circumstances of an error and its probable impact upon the jury. On appeal, we will reverse only upon an abuse of that discretion. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is assessed by the probable persuasive effect of the misconduct upon the jury's decision rather than upon the degree of impropriety of the conduct. "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error."

*Stokes v. State*, 922 N.E.2d 758, 762-63 (Ind. Ct. App. 2010) (quoting *Warren v. State*, 725 N.E.2d 828, 833 (Ind. 2000)), *trans. denied*.

After the jury was discharged, the trial court informed the parties of the note tendered by four of the six jurors. Spinks moved for a mistrial and the trial court denied the motion. The trial judge explained that she interpreted the letter as stating that the jury found Spinks guilty as charged, but asked the trial court for leniency in sentencing.

We agree with the trial court's interpretation of the jurors' letter. I. C. Ann. § 35-47-2-1 (West, Westlaw current through 2012 2nd Reg. Sess.) provides that a "person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun." The evidence adduced at trial established that Spinks

8

possessed a handgun in his vehicle and did not have a license to carry the handgun. Although the statute does not specify a mens rea for the offense, the State charged Spinks with knowingly or intentionally carrying a handgun without a license. The evidence is unrefuted that Spinks knew he had a handgun in his vehicle and that he did not possess a license to carry that handgun. Both the jury's verdict and the jurors's letter indicate the belief that the State had proven that Spinks committed the offense.

Furthermore, the record reveals that the trial court honored the jurors' request. Spinks was sentenced to 365 days with 361 days suspended and four days of credit. Spinks has not established that he was placed in a position of grave peril to which he should not have been subjected. In sum, the trial court did not abuse its discretion in denying the motion for mistrial.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.