

**FILED**

Dec 17 2015, 8:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Richard A. Smikle
Derek R. Molter
Ice Miller LLP
Indianapolis, Indiana

Barry S. Simon
Kannon K. Shanmugam
Allison B. Jones
Amy Mason Saharia
Katherine Moran Meeks
Williams & Connolly LLP
Washington, D.C.

ATTORNEYS FOR APPELLEES

Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Heather Hagan McVeigh
Lara Langeneckert
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
WINE & SPIRITS DISTRIBUTORS OF
INDIANA

Michael P. Maxwell, Jr.
John B. Herriman
Clark Quinn Moses Scott &
Grahn, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
THE INDIANA BEVERAGE
ALLIANCE

Steven M. Badger
Matthew P. Thielemann
Badger Law
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Monarch Beverage Company, Inc.,

*Appellant-Plaintiff,*

v.

David Cook, in his official capacity as Chairman of the Indiana Alcohol and Tobacco Commission, et al.,

*Appellees-Defendants.*

December 17, 2015

Court of Appeals Case No. 49A02-1504-PL-245

Appeal from the Marion Superior Court

The Honorable Timothy Wayne Oakes, Judge

Trial Court Cause No. 49D02-1403-PL-6456

**Kirsch, Judge.**

[1] Indiana's Alcoholic Beverages Law, which consists of several statutory provisions ("the Prohibited Interest Provisions"), prohibits alcohol wholesalers from holding interests in both beer and liquor permits. Monarch Beverage Company, Inc. ("Monarch") filed a complaint against David Cook, in his official capacity as Chairman of the Indiana Alcohol and Tobacco Commission, et al. ("the State"), alleging that the Prohibited Interest Provisions violate the Equal Privileges and Immunities Clause of the Indiana Constitution because the statutes discriminate on their face against beer wholesalers by prohibiting beer wholesalers from seeking a permit to distribute liquor and such restraint is not based upon an inherent difference between beer and liquor wholesalers. The trial court granted summary judgment in favor of the State and against Monarch, finding the statutes to be constitutional. Monarch

appeals the trial court's order, alleging that the trial court erred in its determination that the statutes are not unconstitutional.

We affirm.

## Facts and Procedural History[1]

Indiana extensively regulates the alcoholic beverage industry in the state and has done so since the end of Prohibition. The general purposes of the regulation of alcohol in Indiana are: (1) "[t]o protect the economic welfare, health, peace, and morals of the people of this state"; (2) "[t]o regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages"; and (3) "[t]o provide for the raising of revenue." Ind. Code § 7.1-1-1-1. When Prohibition ended, Indiana, like most other states, adopted a three-tier system for regulating the production, distribution, and sale of alcohol. The first tier consists of brewers, vintners, and distillers, who manufacture alcoholic products. The second tier is comprised of wholesalers who purchase alcoholic products from the manufacturers and sell the products to the retailers and dealers. The third tier consists of retailers and dealers who sell alcoholic products directly to consumers.[2] With limited exceptions, no business holding a

---

[1] Oral argument was heard on this case on December 1, 2015 in the Indiana Supreme Court courtroom in Indianapolis, Indiana. We commend counsel on the excellent quality of their written and oral advocacy.

[2] Retailers include bars and restaurants that sell alcohol for on-premises consumption; dealers include liquor and grocery stores that sell alcohol for off-premises consumption.

license for one of the three tiers may hold an interest in a license for any other tier. *See* Ind. Code §§ 7.1-5-9-2, 7.1-5-9-4, 7.1-5-9-6 to -10.

[4] The focus of this litigation is on the second tier, the wholesalers of alcoholic products. Wholesalers are central to the alcohol regulatory system by creating a buffer between the manufacturers and retailers; they also serve as a port of entry for out-of-state alcoholic products imported into the state, collect excise taxes on alcohol, and ensure that alcoholic products are sold only to licensed retailers and dealers.

[5] In order to wholesale or distribute alcohol in Indiana, one must obtain a permit issued for that limited purpose by the Indiana Alcohol and Tobacco Commission ("the Commission"). *See* Ind. Code §§ 7.1-3-3-1, 7.1-3-8-1. 7.1-3-13-1. The Commission authorizes the distribution of alcohol by type, *i.e.*, beer, wine, liquor, and requires a separate permit to distribute each type of alcohol. Wholesalers are regulated by the Commission in several ways, including being prohibited from tying purchases of one type of alcoholic product to purchases of another, from imposing minimum purchase requirements on retailers and dealers, and from entering into exclusivity contracts with retailers and dealers. *See* Ind. Code § 7.1-5-5-7; 905 Ind. Admin. Code 1-5.1-1. Additionally, wholesalers must make their prices known in writing to their customers, and the prices must be made available to all retailers and dealers on a nondiscriminatory basis for at least seven days after they are publicized. *See* I.C. 7.1-5-5-7(a); 905 I.A.C. 1-31-2.

[6] The Commission also regulates the type and number of permits a particular wholesaler may hold at any given time. The Commission issues separate permits for the wholesale distribution of beer, wine, and liquor. Beer wholesale permits are issued on a county-by-county basis, with a limit on the number of wholesale permits that can be issued by each county based on the county's population. Ind. Code § 7.1-3-22-2. Wine and liquor wholesale permits, however, are issued statewide without any limit to the number of permits that can be awarded. *See generally* Ind. Code §§ 7.1-3-22-1 to -10. Under Indiana Code sections 7.1-5-9-3, 7.1-5-9-4, 7.1-5-9-6, and 7.1-3-3-19 ("the Prohibited Interest Provisions"), a wholesaler may obtain one of the three individual permits, both a wine and a beer permit, or both a wine and a liquor permit. However, a wholesaler may not hold both a beer and a liquor wholesale permit. I.C. 7.1-5-9-3(b). Despite this restriction, any wholesaler who holds permits for wine and for liquor may also distribute up to a million gallons a year of flavored malt beverages, which are a type of beer. Ind. Code §§ 7.1-3-8-3, 7.1-3-13-3(d). Likewise, a wholesaler who hold permits for wine and for beer may distribute brandy and certain cream-based liquors. Ind. Code §§ 7.1-3-3-5, 7.1-3-13-3.

[7] Wholesalers who have acquired a permit for beer receive certain statutory franchise protections. One such franchise protection makes it unlawful for a manufacturer of beer to terminate an agreement or contract with a beer wholesaler "unfairly and without due regard for the equities of the other party." Ind. Code § 7.1-5-5-9(c). Additionally, when a beer supplier obtains the rights to a particular brand of beer from another beer supplier, the new supplier

cannot transfer the distribution right to a new wholesaler unless that new wholesaler compensates the existing wholesaler for the fair market value of the existing wholesaler's right to distribute the beer. Ind. Code §§ 7.1-3-25-7. 7.1-3-25-9, 7.1-3-25-13. Under such statutory protection, a beer wholesaler that loses an account due to a transfer of rights in the supply tier will be protected from bearing the financial burden of the transfer. If a violation of these franchise protections is suspected, a beer wholesaler can report it to the Commission, who is required to investigate and enforce injunctions under the provisions. Ind. Code § 7.1-2-3-26. A wholesaler who holds a permit for wine or liquor or both does not receive such protections by the Commission.

[8] Monarch is a wholesaler of alcoholic products in Indiana and currently possesses permits to distribute both beer and wine. Monarch has been a wholesaler of beer since 1947, when it began operation, and a wholesaler of wine since 1976. Monarch distributes wine in all ninety-two counties in Indiana and beer in eighty-nine counties and is the exclusive distributor of MillerCoors beer in seventy of those eighty-nine counties. It distributes wine manufactured by E. & J. Gallo Winery ("Gallo"). Gallo also manufactures four liquor products, which Gallo would like Monarch to distribute as well; however, because Monarch holds a permit for the wholesale of beer, under Indiana law, it cannot also obtain a permit to wholesale liquor.

[9] On March 5, 2014, Monarch filed a complaint against the State, alleging that Indiana's restriction against the joint wholesaling of beer and liquor, specifically, the Prohibited Interest Provisions, violates the Equal Privileges and

Immunities Clause of the Indiana Constitution. After discovery, the parties filed cross-motions for summary judgment. The State contended that Monarch could not maintain an Equal Privileges and Immunities claim because the Prohibited Interest Provisions treated all wholesalers alike and that, even if they did not, the statutes were justified as they are rationally related to the legitimate public purposes underlying Indiana's regulation of the alcoholic beverage industry. Monarch asserted that an Equal Privileges and Immunities claim existed because the Prohibited Interest Provisions singled out beer wholesalers for disparate treatment and that such treatment is not justified by an inherent and substantial difference between beer wholesalers and liquor wholesalers.

[10] On April 22, 2015, the trial court issued an order denying Monarch's motion for summary judgment and granting summary judgment in favor of the State. In its order, the trial court did not agree with Monarch that the Equal Privileges and Immunities Clause supports its "challenge of a discriminatory restraint on beer wholesalers" because at the "time of election of which wholesaler to be, beer or liquor, the wholesalers stand equal." *Appellant's App*. at 11. The trial court stated its belief that the solution for Monarch "is a political one, best suited for the halls of the Statehouse, and not a constitutional one, found at the courthouse." *Id*. Monarch now appeals.

## Discussion and Decision

[11] "When a party claims that a statute is unconstitutional on its face, the claimant assumes the burden of demonstrating that there are no set of circumstances under which the statute can be constitutionally applied." *Meredith v. Pence*, 984

N.E.2d 1213, 1218 (Ind. 2013) (citing *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind. 1999)). "[I]n reviewing the constitutionality of a statute, 'every statute stands before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing.'" *Id.* (quoting *Baldwin*, 715 N.E.2d at 338).

> Our methodology for interpreting and applying provisions of the Indiana Constitution is well established. It requires a search for the common understanding of both those who framed it and those who ratified it. To determine this intent, we examine the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions. We look to history to ascertain the old law, the mischief, and the remedy. A statute challenged under the Indiana Constitution stands before this Court clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of a statute bears the high burden of overcoming this presumption and establishing a constitutional violation, and any doubts are resolved in favor of the legislature.

*Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1272-73 (Ind. 2014) (internal citations and quotations omitted).

[12] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139, 1140 (Ind. Ct. App. 2013) (citing *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269-70 (Ind. 2009)). We stand in the shoes of the trial court and apply a *de novo* standard of review. *Old Utica Sch. Pres., Inc. v. Utica Twp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014) (citing *FLM, LLC v. Cincinnati Ins. Co.,*

973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012), *trans. denied*), *trans. denied.* Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *FLM*, 973 N.E.2d at 1173. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

[13] The party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.* In this case, the parties filed cross-motions for summary judgment; however, the fact that cross-motions for summary judgment were made does not alter our standard of review. *Mahan v. Am. Standard Ins. Co.,* 862 N.E.2d 669, 676 (Ind. Ct. App. 2007), *trans. denied.* "Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Id.*

[14]     Monarch argues that the Prohibited Interest Provisions are unconstitutional because the statutes violate Article 1, section 23 of the Indiana Constitution, the Equal Privileges and Immunities Clause. In *Collins v. Day,* 644 N.E.2d 72 (Ind. 1994), our Supreme Court "engaged in a comprehensive review of the history and purposes animating the adoption of Section 23 as part of Indiana's 1851 Constitution and of the subsequent case law, particularly our early decisions that were contemporaneous with its adoption and which were 'accorded strong and superseding precedential value.'" *League of Women Voters of Ind., Inc. v. Rokita*, 929 N.E.2d 758, 769 (Ind. 2010) (quoting *Collins*, 644 N.E.2d at 77). Combining history, text, and subsequent case law, the Court adopted a "superseding analytical formulation that, when statutes grant unequal privileges or immunities to differing persons or classes of persons, the Equal Privileges and Immunities Clause imposes two requirements": (1) "'the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes'"; and (2) "'the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.'" *Id.* at 769-70 (quoting *Collins*, 644 N.E.2d at 80). Additionally, in determining whether a statute complies with or violates Section 23, we must exercise substantial deference to legislative discretion. *Id.* at 770.

[15]     Monarch argues that the Prohibited Interest Provisions are facially discriminatory, and the trial court erred when it determined that Monarch cannot sustain an Equal Privileges and Immunities claim because the Prohibited Interest Provisions subject all wholesalers to the same discriminatory

restraint. Monarch contends that the Prohibited Interest Provisions are "quintessential examples of laws that classify" because the laws clearly designate a trait, the possession of a beer wholesaler permit, and impose burdens on those that hold such a trait. Monarch alleges that the Prohibited Interest Provisions specifically deny to anyone holding a beer wholesaler's permit the privilege of holding a liquor wholesaler's permit, and likewise, anyone holding a liquor wholesaler's permit from holding a beer wholesaler's permit, while affording that opportunity to everyone else.

[16] As a threshold matter, before reaching the two-part test from *Collins,* it is necessary that an appellant identify two groups of people who are disparately treated by the statute the appellant challenges. *Robertson v. Gene B. Glick Co.*, 960 N.E.2d 179, 185 (Ind. Ct. App. 2011) (citing *Collins*, 644 N.E.2d at 78-79), *trans. denied*. Therefore, before we can engage in the Equal Privileges and Immunities analysis, Monarch must demonstrate that the challenged statutes grant unequal privileges or immunities to differing persons or classes of persons. *League of Women Voters*, 929 N.E.2d at 769-70. In other words, Monarch must show that the Prohibited Interest Provisions allow for disparate treatment of beer wholesalers and another class of persons.

[17] In its order granting summary judgment to the State and denying summary judgment to Monarch, the trial court did not agree with Monarch's contention that the Prohibited Interest Provisions created a discriminatory restraint on beer wholesalers and that, therefore, the Equal Privileges and Immunities Clause analysis applied to Monarch's challenge. The trial court stated that, "[a]t the

time of election of which wholesaler to be, beer or liquor, the wholesalers stand equal [and] [o]nly after the election by statute do the subsequent and consequential restrictions apply." *Appellant's App.* at 11. Finding that Monarch had not met the threshold requirement that an appellant must identify two groups of people who are disparately treated by the challenged statute, the trial court did not reach the two-part test.

[18] Under the Prohibited Interest Provisions, a wholesaler may obtain one of the three individual permits, both a wine and a beer permit, or both a wine and a liquor permit. However, a wholesaler may not hold both a beer and a liquor wholesale permit. I.C. 7.1-5-9-3(b). Therefore, the Prohibited Interest Provisions treat all persons and all wholesalers of alcohol exactly the same. Each person who wishes to become an alcohol wholesaler comes to the Commission with the same basic choice, whether to become a wholesaler of beer or a wholesaler of liquor. At the time the person makes a choice, they are treated equally, and the Prohibited Interest Provisions do not somehow force some persons to become beer wholesalers and others to become liquor wholesalers. After the person has made the choice to wholesale either beer or liquor, they are still treated equally as beer and liquor wholesalers are equally prohibited from obtaining permits to distribute any other alcohol except for wine. No one may hold an interest in both a beer and a liquor permit.

[19] Monarch does not identify any similarly situated class that receives preferential treatment under the Prohibited Interest Provisions. Monarch contends that the Prohibited Interest Provisions "deny to anyone holding a beer wholesaler's

permit the privilege of holding a liquor wholesaler's permit, and vice versa, while affording that opportunity to *everyone else*." *Appellant's Br*. at 17 (emphasis added). Monarch does not explain who the phrase everyone else refers to and identifies no particular class that is treated differently under the Prohibited Interest Provisions. Pursuant to the Prohibited Interest Provisions, all persons who seek to obtain a wholesaler's permit from the Commission are treated *equally* and have an *equal* opportunity to choose to become either a beer wholesaler or a liquor wholesaler, and after a choice has been made, beer and liquor wholesalers are *equally* prohibited from acquiring a permit to distribute any other alcohol except for wine. There can be no Equal Privileges and Immunities claim where all classes of person are treated equally. *Robertson*, 960 N.E.2d at 185. The Prohibited Interest Provisions preclude any person from acquiring permits to become a wholesaler of both beer and liquor and treat Monarch no differently than other persons.

[20] Because Monarch has not identified any group of people who are disparately treated by the Prohibited Interest Provisions and allowed to obtain permits to distribute both beer and liquor, it has failed to meet the threshold requirement that the challenged statutes must grant unequal privileges or immunities to differing classes of persons. *See League of Women Voters*, 929 N.E.2d at 769-70. Therefore, we conclude that Monarch has not shown sufficient disparate treatment to invoke the Equal Privileges and Immunities analysis, and the Prohibited Interest Provisions are constitutional. The trial court did not err in

granting summary judgment in favor of the State and in denying summary judgment to Monarch.

[21] Affirmed.

Najam, J., and Barnes, J., concur.